In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2668

U.S. Freightways Corp.,
f.k.a. TNT Freightways Corp.,
and Subsidiaries,

Plaintiff-Appellant,

v.

Commissioner of Internal Revenue,

Defendant-Appellee.

Appeal from the United States Tax Court.
No. 459-98--Arthur L. Nims, III, Judge.

Argued January 18, 2001--Decided November 6, 2001


  Before Bauer, Manion, and Diane P. Wood,
Circuit Judges.

  Diane P. Wood, Circuit Judge.  This is an
appeal from the United States Tax Court's
decision affirming the Commissioner's
determination that U.S. Freightways Corp.
(Freightways) improperly deducted certain
expenses during the 1993 tax year.
Although we acknowledge that even after
United States v. Mead Corp., 121 S.Ct.
2164 (2001), we owe some deference to the
Commissioner's interpretation of his own
regulations, we conclude here that the
lack of any sound basis behind the
Commissioner's interpretation, coupled
with a lack of consistency on the
Commissioner's own part, compels us to
rule in favor of Freightways. Because the
Tax Court did not reach the
Commissioner's alternative argument that
Freightways' method of accounting for the
expenses in question did not clearly
reflect its income, we remand for the
limited purpose of allowing that court to
consider this issue in the first
instance.

I

  This case was tried before the Tax Court
on stipulated facts. Freightways is a
long-haul freight trucking company that
operates throughout the continental

United States. In 1993, it had a fleet of 14,766 trucks and was growing. Every year it is required to purchase a large number of permits and licenses and to pay significant fees and insurance premiums in order legally to operate its fleet of vehicles. These items are referred to collectively as FLIP expenses in the record, and we will follow that convention. During the 1993 tax year, Freightways' FLIP expenses totaled $5,399,062. None of the licenses and permits at issue was valid for more than twelve months, nor did the benefits of any of the fees and insurance premiums paid extend beyond a year from the time the expense was incurred. But because the various FLIP expenses were incurred at different times during the tax year, Freightways enjoyed the benefits of a substantial portion of them in more than one tax year. According to Freightways' own accounting, $2,984,197, or approximately 55%, of the FLIP expenses it incurred in 1993 actually benefitted the company during 1994.

Despite the subsequent tax year benefits of its FLIP expenses, Freightways, which otherwise uses the accrual accounting method for bookkeeping and tax reporting purposes, deducted the entire $5,399,062 in FLIP expenses on its 1993 federal income tax return. This had been its common practice for a number of years. After auditing Freightways' tax return, the Commissioner concluded that Freightways should have capitalized its 1993 FLIP expenses and deducted them ratably over the 1993 and 1994 tax years. Freightways disputed this conclusion and petitioned the Tax Court for a redetermination of the IRS's proposed judgment. The Tax Court sided with the Commissioner, concluding that under the relevant provisions of the tax code, Freightways, as an accrual method taxpayer, was required to capitalize these expenses. Given this holding, the court declined to reach the Commissioner's alternative argument that Freightways' use of the accrual accounting method did not fairly reflect its income.

II

Whether a taxpayer is required to capitalize particular expenses is a question of law, and our review is therefore de novo. See Heffley v.

Commissioner, 884 F.2d 279, 282 (7th Cir. 1989). In order to place the issues in context, we begin by addressing the Tax Court's resolution of the case. The court recognized that whether Freightways could properly deduct its FLIP expenses in full depends on whether they are ordinary and necessary business expenses as defined by I.R.C. sec. 162(a), or capital expenditures covered by sec. 263(a). Citing INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992), the court explained, accurately, that the essential reason behind the need to distinguish between currently deductible expenses and those that are subject to capitalization is "to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes." 503 U.S. at 84. Some mismatching is inevitable: it is not necessary to count every pencil on hand at the end of a tax year to determine whether it will be useful in the next tax year and, if so, to treat it as a capital asset. The critical consideration in determining whether an expense should be treated as a capital expenditure is whether the expenditure produces more than an incidental future benefit or, as the Treasury Regulations put it, whether a benefit for the taxpayer extends "substantially beyond the tax year." See, e.g., Treas. Regs. sec.sec. 1.263(a)-2, 1.461-1(a)(2).

This means that, but for the accident that Freightways' expense year does not correspond with its tax year, there would be no problem in treating the FLIP expenses as current. The licenses and fees Freightways purchased conferred a 12-month benefit on the company; if it had incurred those expenses on January 1 of each year and they had all expired on December 31 (the tax year for Freightways), no one would have argued that capitalization was required. But for reasons unrelated to taxation, that is not the way the FLIP expenses worked. The Tax Court's task was thus to unravel the tax implications of this quirk, which turn on the lines that must be drawn conceptually between deductible expenses and capital expenditures.

Turning to the question whether Freightways' FLIP expenses were deductible in full in the year they were

incurred, the Tax Court understood Freightways to be arguing that it should be allowed to deduct its FLIP expenses in full under a "one-year rule" permitting the deduction of any current expense with a benefit that extends less than 12 months into the subsequent tax year. The application of this principle would rid the Commissioner's position of its intrinsic arbitrariness: under a one-year rule, nothing would turn on the accident of the date during a year when a one-year expenditure was made. The worst case (from the Commissioner's standpoint) one could imagine of a mis-match between the year of payment and the year of benefit would be the one in which a taxpayer bought all its licenses on December 31 of year 1 and deducted their entire cost in that year, even though the entire benefit accrued in year 2. (The worst for the taxpayer might be a case in which the license was purchased on February 1 of the first year and expired on January 31 of the next year, if the Commissioner regarded a full month as "substantial" enough to require capitalization.) The Tax Court rejected Freightways' reliance on a one-year rule for two reasons. First, it questioned whether such rule was, in fact, well established in the case law. Second, it found that Freightways had a "more fundamental problem," namely the fact that "even if such a 1-year rule were widely recognized, it would be inapplicable to an accrual method taxpayer." On these two grounds, and without further explanation, the court affirmed the Commissioner's deficiency judgment.

III

This is a difficult case because the language of the Code, the regulations, and the presumption in favor of capitalization to varying degrees support the Commissioner's position, but the rationale for distinguishing between immediate expenses that should be deducted from a single year's income and longer term expenses that are suitable for amortization strongly cuts in Freightways' direction. Furthermore, as we explain below, the Tax Court's alternative ruling that any judge-made "one year rule ought not logically to be available to accrual taxpayers" is not supportable. Because so much turns on the degree of deference we owe to the

Commissioner in these circumstances, we begin with a brief discussion of that subject and then turn to the merits of the case.

A.

At the most general level, this case turns on which of two provisions of the Code itself should apply to Freightways' situation: section 162(a), which permits the deduction of ordinary and necessary business expenses, or sec. 263(a), which calls for the capitalization of all other expenditures. The Commissioner has issued notice-and-comment regulations that elaborate on the way this choice should be made. As we noted above, those regulations provide that expenditures producing nothing more than an "incidental" future benefit are eligible for current year deductions, while expenditures whose benefits extend "substantially" beyond the tax year must be capitalized. See Treas. Regs. sec.sec. 1.263(a)-2, 1.461-1(a)(2). But this is not a case where the regulations themselves fully answer the question before us. Instead, another layer of interpretation has been laid on top of the regulations: the Commissioner has informed the courts throughout the course of this litigation that the term "substantially" as used in the regulations should be interpreted to cover anything that extends more than a few days, or perhaps a month, into the second tax year. This is so regardless of the implications for the capitalization decision of the other factors normally used to draw the line between ordinary and capital expenses.

In the ordinary case, our focus is on the deference we must give to a regulation itself. After Mead, we know that we give full deference under Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), only to regulations that were promulgated with full notice-and-comment or comparable formalities. See Mead, 121 S. Ct. at 2171. We also know that deference to agency positions is not an all-or-nothing proposition; more informal agency statements and positions receive a more flexible respect, in which factors like "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness

of the agency's position," are all relevant. Id. Finally, in the typical case where the validity of a regulation is at issue, we have explained before that Chevron requires us to apply a two-step analysis:

(1) We examine the text of the statute-- in this case, the relevant section of the tax code. If the plain meaning of the text either supports or opposes the regulation, then we stop our analysis and either strike or validate the regulation. But if we conclude the statute is either ambiguous or silent of the issue, we continue to the second step:

(2) We examine the reasonableness of the regulation. If the regulation is a reasonable reading of the statute, we give deference to the agency's interpretation.

Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 983 (7th Cir. 1998).

In the present case, however, no one is arguing that the regulations the Commissioner has promulgated are invalid or that they are inconsistent with the text of the Code. The issue is instead whether the Commissioner's interpretation of his own regulations is a reasonable one. And as to that, there is no question but that the interpretive methodologies he has used have been informal. The interpretation with which we are concerned has emerged inferentially in the way the IRS has applied the rules to different cases and it has appeared through the litigating positions the Service has taken.

Both the informality of this interpretation and the context in which it has arisen persuade us that full Chevron deference is not appropriate here. Mead expressly disapproved of the exercise of such deference for the customs regulations that were at issue there, in part because of the boot-strapping that could otherwise occur. With full Chevron deference, agencies could pass broad or vague regulations through notice-and-comment procedures, and then proceed to create rules through ad hoc interpretations that were subject only to limited judicial review. All told, we think this is a clear case for the flexible approach Mead described,

relying on the Supreme Court's earlier decision in Skidmore v. Swift & Co., 323 U.S. 134 (1944), and we thus proceed on that basis.

B.

One reason the Tax Court gave for accepting the Commissioner's disallowance of Freightways' deductions was that, even if there is some kind of one-year rule for deductible expenses, accrual taxpayers are never entitled to it. This, we conclude, is an unsustainable position. In flatly rejecting the one-year rule for accrual taxpayers, that court relied largely on implications from its own earlier decision in Johnson v. Commissioner, 108 T.C. 448 (1997). Johnson involved an accrual taxpayer that had purchased various insurance policies covering periods of one to seven years. The Tax Court held that regardless of the length of the policy, to the extent that part of the premiums paid was allocable to subsequent tax years, capitalization and amortization was required. We think the court read too much into Johnson, and from a broader point of view (since we at least are not bound by earlier Tax Court decisions) it confuses the time when income is generated or expenditures are incurred (when paid or received, versus when the rights accrue) with the length of the economic benefit they will yield. Although Johnson used broad language that could be interpreted to be inconsistent with the existence of a one-year rule, it did not link its holding to the taxpayer's method of accounting.

Moreover, Johnson relied on Commissioner v. Boylston Market Association, 131 F.2d 966 (1st Cir. 1942), for the proposition that "lump sum payments for multiyear insurance coverage generally are capital expenditures." See Johnson, 108 T.C. at 488. Boylston Market involved a cash basis taxpayer and specifically concluded that a taxpayer, "regardless of his method of accounting" must capitalize a three-year prepaid insurance policy because it is an asset having "a longer life than a single taxable year." Id. at 968. While Boylston Market's statement of the one-year rule may be ambiguous, the court clearly believed it applied to both accrual and cash basis taxpayers. In fact, the Tax Court commented in Johnson that Boylston Market supported a one-year

rule for cash basis taxpayers, who, it acknowledged, could fully deduct insurance premiums covering a year or less. In Freightways' case, the Tax Court also found support for its position in Zaninovich v. Commissioner, 616 F.2d 429, (9th Cir. 1980). Zaninovich permitted a deduction for a rental payment that extended eleven months into the subsequent tax year and sought to reconcile its position with the Board of Tax Appeals' contrary holding in Bloedel's Jewelry, Inc. v. Commissioner, 2 B.T.A. 611 (1925), by pointing out that Bloedel's involved an accrual method taxpayer. 616 F.2d at 431-32 & nn. 5-6. This is a fairly weak reed for present purposes, as the effort to distinguish Bloedel's was unnecessary in any event to the Ninth Circuit's decision, and that court made no effort to think carefully about what consequences should flow from a taxpayer's choice of accounting methods.

In our view, the decision whether to expense or capitalize a particular item should not turn on whether the taxpayer uses the cash or accrual basis of accounting. As Freightways points out, even the Treasury Regulation on which the Commissioner has relied here, Treas. Reg. sec. 1.461-1(a), uses identical language in subpart (1) (relating to cash basis taxpayers) and in subpart (2) (relating to accrual basis taxpayers): both must capitalize an expenditure that results in the creation of an asset having a useful life which extends substantially beyond the close of the tax year. The mere fact that Freightways is an accrual method taxpayer thus does not disqualify it from expensing the short-term items at issue here.

C.

We turn thus to the central reason the Commissioner, as affirmed by the Tax Court, gave: that no matter what other characteristics an expenditure has, if it is made in one tax year and its useful life extends "substantially" (an undefined term) beyond the close of that year, then it must be capitalized. Perhaps this rule works in some simple cases. It relies on an implicit spectrum between things that are consumed immediately and those that last well beyond a year. Consumable office

supplies, such as paper and pens, might not be thought to have a useful life that will extend substantially beyond a given year, even if they are acquired late in the year (though it depends on the pen-- some disposable pens bought in November might well be functioning four or five months into the new year). Something like computers or furniture, on the other hand, predictably will last beyond one tax year. The problem is that many things fall somewhere in the middle of this hypothetical spectrum. Some employers, for example, pay for employee training seminars, which surely create human capital that lasts for many years. Are the training expenses one-year deductible items? Must they be capitalized? What about a light bulb that the company expected would last for eight months, but turned out to be burning brightly after 14--or anything else whose useful life was estimated at approximately a year, but that might have failed sooner or lasted longer? The license fees, permit fees, and insurance premiums Freightways pays are, in a sense, easier to characterize as deductible expenses than the pens or the light bulbs because the issuing entities and insurance companies have strictly defined the useful life of the item to be exactly one year--not a minute more or less. The only reason that the FLIP expenses are also in the middle range of the spectrum is because the twelve-month period each one covers will usually lap across two tax years.

  Looking at the language of Treas. Reg. sec. 1.263(a)-2, we find two somewhat contradictory clues. On the one hand, there is the simple word "substantially," which the Commissioner seems to interpret as meaning at least a month (or maybe two, three, or four months?) into a second tax year. We do not wish to quibble about the number of months because even Freightways appears to concede that nine, ten, or eleven months into a second year would qualify as "substantially," and some of the FLIP expenses might fit this pattern. Indeed, "substantially" could be defined instead as a ratio between the benefit in the year of deduction and the subsequent tax year. But, on the other side, Treas. Reg. sec. 1.263(a)-2 certainly suggests that the FLIP expenses are not similar to the kinds of expenditures that the IRS itself thinks must be capitalized. The most

pertinent subsection of that regulation indicates that "[t]he cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the tax year" should be capitalized. Id. at sec. 1.263(a)-2(a). Followers of the interpretive maxim expressio unius est exclusio alterius would argue that the enumeration of items all of which seem to have a multiple-year life span implies that something that will expire or wear out in exactly a year should not be capitalized. We further note that these examples are all of expenses that become part of the basis of a capital good. There is no such capital good attached to the FLIP expenses. In this sense, Freightways' position is even more compelling than that of the petitioner in the leading case of PNC Bancorp, Inc. v. Commissioner, 212 F.3d 822 (3d Cir. 2000). PNC Bancorp relied on the language of sec.sec. 162(a) and 263(a) and the regulations enacted thereunder to hold that ordinary and necessary expenses incurred in the origination of loans could be deducted under sec. 162(a). It explained that recurring, administrative expenses that are necessary to the business activity of the petitioner fall too far "from the heartland of the traditional capital expenditure (a 'permanent improvement or betterment')," id. at 835, to require capitalization. That permanence is precisely what the FLIP expenses lack.

The regulation itself, it is evident, does not resolve this issue one way or the other. We turn then to the way the IRS has applied the regulation. It is not particularly useful in this connection to focus on whether some kind of "one-year" rule exists: it is clear that no such rule has been promulgated using notice-and-comment or other formal procedures, and thus at most we would be deciding whether it could be discerned in agency practice. The Commissioner denies that there is any such rule. Freightways, for its part, points to numerous Revenue Rulings, decisions of the Tax Court, and judicial opinions in which deductions have been allowed for expenditures whose value is limited to twelve months, even if two tax years are covered. See, e.g., Rev. Rul. 59-239, 1959-2 C.B. 55 (deduction allowed for cost of tires and

tubes with average useful life of one year or less); Rev. Rul. 69-81, 1969-1 C.B. 137 (deduction allowed for cost of towels, garments, and gloves with useful life of one year or less); Mennuto v. Commissioner, 56 T.C. 910, 924 (1971) (deduction allowed for costs of installing leeching pit designed to last for one year); Bell v. Commissioner, 13 T.C. 344, 348 (1949) (current deduction allowed for insurance expense where policy covered part of 1945 and part of 1946); Encyclopedia Britannica v. Commissioner, 685 F.2d 212, 217 (7th Cir. 1982) (stating that a capital expenditure is anything that yields income beyond a period, typically one year, in which the expenditure is made); Clark Oil and Ref. Corp. v. United States, 473 F.2d 1217, 1219-20 (7th Cir. 1973) (also mentioning a useful life of one year as the normal dividing line between a capital expense and an ordinary expense).

The Commissioner replies, correctly in our opinion, that none of these decisions turned on the precise question now before us: whether there really is a rule under which all prepaid expenses with a useful life of only one year, but whose benefits extend substantially into a second tax year, are entitled to treatment as deductible ordinary expenses rather than capital expenditures. Furthermore, to the extent that we should consider statements made in earlier decisions in the context of the issues presented and the ultimate holdings of the cases, it is notable that in both Encyclopedia Britannica and in Clark Oil this court eventually rejected the taxpayer's argument that certain expenses were deductible and ruled that they had to be capitalized. See Encyclopedia Britannica, 685 F.2d at 218; Clark Oil, 473 F.2d at 1220-21. Even so, we are left with a point that cuts in Freightways' favor: there has been no consistent practice on the Commissioner's part under which capitalization of these expenditures has been required. Indeed, to the extent that agency practice exists at all, it appears that deductions have been allowed in a substantial number of cases.

Persuasiveness is another factor that Skidmore and Mead identify as important in this kind of case. This too favors Freightways. As the Commissioner's own examples in the regulation underscore,

the policy behind the distinction between capitalization and expense tends to support Freightways. We know from the Supreme Court's decision in INDOPCO that it is difficult to draw decisive distinctions between current expenses and capital expenditures, because we are often dealing with differences of degree and not of kind. See 503 U.S. at 86. We also know that an income tax deduction is a matter of legislative grace and thus the burden of clearly showing the right to the claimed deduction is on the taxpayer. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943). Deductions are the exception to the norm of capitalization and are allowed only as there is a clear provision therefor. INDOPCO, 503 U.S. at 84 (internal quotations and citations omitted); A.E. Staley Mfg. Co. v. Commissioner, 119 F.3d 482, 486 (7th Cir. 1997). If an expenditure satisfies both the definition of 162 and the requirements of 263, the latter statutory provision takes precedence and the expense must be capitalized. Commissioner v. Idaho Power Co., 418 U.S. 1, 17 (1974); Fishman v. Commissioner, 837 F.2d 309, 312 (7th Cir. 1988). This presumption obviously favors the Commissioner in the instant case. At the same time, however, "the Court did not purport to be creating a talismanic test that an expenditure must be capitalized if it creates some future benefit." A.E. Staley Mfg. Co., 119 F.3d at 489 (discussing INDOPCO).

Even the Commissioner concedes the ordinariness of Freightways' FLIP expenses for companies in the trucking business. Not only are they ordinary, but as Freightways points out, they recur, with clockwork regularity, every year. Both this court and the IRS have recognized this type of regularity as something that tends to support a finding of deductibility. See Encyclopedia Britannica, 685 F.2d at 216-17; Tech. Adv. Mem. 9645002 (June 21, 1996). Recurrent expenses are more likely to be ordinary and necessary business expenses. See, e.g., Tech. Adv. Mem. 7401311140A (January 31, 1974) ("We believe the Davee principle concerning the recurrent nature of an expense serves as a useful basis for distinguishing ordinary business expenses from expenses that are in the nature of capital expenditures, regardless of what type of expense may be

at issue."). Because they recur every year, there is less distorting effect on income from future tax year benefits over time. In every year, that is, while Freightways will be able to reap the tax advantage of deduction for some part of the following twelve months, it will have "lost" the deductions for the months covered by the prior year's licenses, for which it has already received the benefit. In a hypothetical last year of Freightways' corporate life, it would finally be entitled to only a prorated deduction for licenses (if any) that are acquired during that year, partially evening out the score with the first year of deductions. Freightways argues that this is exactly its situation: its FLIP expenses recur annually, and it has consistently deducted them in their entirety.

The Commissioner responds that some distortion remains as long as the expenses are not capitalized. Here, it is undisputed that the change from expensing to amortizing would have meant an increase in Freightways' 1993 tax income of $2,984,197, which corresponded to a tax deficiency of $1,712,070. The Commissioner was also prepared to introduce evidence of financial data for years after 1993, for the purpose of showing the distortion in income that Freightways' system was causing. In his appellate brief, the Commissioner asserts that expensing was allowing Freightways in a sense to borrow deductions from later years and thus to lower its tax burdens year after year: for the years 1993 through 1997, the Commissioner asserts, total deductions for FLIP expenses using Freightways' method exceeded the amount that capitalization would have allowed by $2,363,925. We agree with him that the mere fact that certain expenditures recur does not negate the distorting effect of expensing that predictably occurred here--the interest-free government loan that comes from the deduction remains the same regardless of whether the FLIP expenses are unchanged throughout the corporate life of Freightways.

But perfection is a lot to ask for, even in the administration of the tax laws, which we acknowledge endeavor "to match expenses with the revenues of the taxable period to which they are properly

attributable, thereby resulting in a more accurate calculation of net income for tax purposes." INDOPCO, 503 U.S. at 84; Rev. Rul. 95-32, 1995-1 C.B. 9. We note again in this regard that Freightways' pattern of FLIP expenditures had nothing to do with tax planning; external agencies and companies controlled the time when its licenses, permits, and policies had to be renewed. As such, we do not expect its pattern of FLIP expenditures to change based on the outcome of this case. We find it significant that it was not Freightways that was manipulating the tax laws in order to obtain the implicit loans about which the Commissioner is concerned. It was external realities over which the taxpayer had no control.

Freightways' final point is that perfection in temporal matching comes at too high a price for these kinds of expenses. At some point the "administrative costs and conceptual rigor" of achieving a more perfect match become too great. Encyclopedia Britannica, 685 F.2d at 216. Here, there is a considerable administrative burden that Freightways and any similarly situated taxpayer will bear if it must always allocate one-year expenses to two tax years, year in and year out. It argues that the gain in precision for the taxing authorities is far outweighed by the administrative burden it will bear in performing this task. The Commissioner responds that, as an accrual taxpayer, Freightways is already reflecting on its financial accounting records precisely the allocation the Commissioner wants for tax purposes. But it is well known that financial accounting and tax accounting need not be handled in exactly the same way. See, e.g., United States v. Hughes Properties, Inc., 476 U.S. 593, 603 (1986) ("Proper financial accounting and acceptable tax acounting, to be sure, are not the same. . . . The Court has long recognized the vastly different objectives that financial and tax accounting have."). See also Peoples Bank and Trust Co. v. Commissioner, 415 F.2d 1341, 1343 (7th Cir. 1969). The kind of change in the company's tax accounting system for which the Commissioner is arguing will impose an administrative burden regardless of the way its financial accounts are kept.

We conclude that, for the particular kind of expenses at issue in this case--fixed, one-year items where the benefit will never extend beyond that term, that are ordinary, necessary, and recurring expenses for the business in question--the balance of factors under the statute and regulations cuts in favor of treating them as deductible expenses under I.R.C. sec. 162(a). We therefore reverse the Tax Court's ruling to the contrary.

IV

One final point remains to be decided. The Commissioner argued before the Tax Court that Freightways' method of accounting did not clearly reflect its income. When the Commissioner has made such a determination, he can require computation of taxable income under an alternative method that will accurately reflect income. I.R.C. sec. 446(b). See Hughes Properties, 476 U.S. at 603. Freightways concedes that the Tax Court did not reach this point, but it urges that we should decide as a matter of law that its method of accounting did clearly reflect its income. The Commissioner, however, possesses broad discretion in this area, and we are reluctant to decide the case as a matter of law on the state of the record as it now stands. We will instead remand the case to the Tax Court for the limited purpose of considering this alternative ground for the Commissioner's decision.

The judgment of the Tax Court is Reversed, and the case is Remanded to the Tax Court for further proceedings consistent with this opinion.