T.C. Memo. 2011-100

UNITED STATES TAX COURT

LATTICE SEMICONDUCTOR CORPORATION AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13109-08.                    Filed May 9, 2011.

<u>Steven Marc Wilker</u>, <u>Mark F. LeRoux</u>, and <u>Michael J.
Millender</u>, for petitioner.

<u>John D. Davis</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's tax for its taxable years ending April 3, 1999 and
December 30, 2000 (the years at issue) of $338,989 and $254,240,
respectively, resulting from disallowance of a consolidated net
operating loss (CNOL) carryback from 2002.  There are two issues

to decide.  The first issue is whether respondent erred in denying petitioner's request to change its accounting method with respect to 12-month expenses for 2002.  We hold that he did not. The second issue is whether petitioner may claim a prepaid expense deduction for 2002.  We hold that it may not.

## Background

This case was submitted fully stipulated under Rule 122.[1] The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner was an accrual method taxpayer with its principal place of business in Hillsboro, Oregon at the time it filed the petition.

Petitioner designs, develops and markets high-performance programmable logic devices and related software.  Petitioner traditionally incurred regular expenses from prepaid insurance, maintenance and service contracts (contracts).  These contract expenses were prepaid expenses under section 263 and the regulations promulgated thereunder as of 2002.  The benefits of these contracts typically did not exceed 12 months, but the contract periods sometimes spanned two tax years.  Before 2002 petitioner capitalized its prepaid expenses for contracts that extended substantially into the following year.

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code) in effect for 2002, unless otherwise indicated.

The Treasury Department issued an Advance Notice of Proposed Rulemaking (ANPRM) in January 2002 stating that it expected to propose a rule that would no longer require capitalization of 12-month prepaid expenses under section 263. ANPRM, 67 Fed. Reg. 3461 (Jan. 24, 2002). The next month, respondent issued an Industry Directive on Guidelines for the Application of Advance Notice of Rulemaking for Intangibles Under IRC 263(a) (Industry Directive) (Feb. 26, 2002). The Industry Directive stated the ANPRM's 12-month rule would likely be adopted despite the Internal Revenue Service's (IRS) contrary position at the time. The Industry Directive further cautioned that prior IRS consent was still required for accounting method changes.

The Treasury Department published a Notice of Proposed Rulemaking (NPR) regarding 12-month prepaid expenses in December 2002. Sec. 1.263(a)-4(f)(1), Proposed Income Tax Regs., 67 Fed. Reg. 77719 (Dec. 19, 2002). The NPR again proposed to incorporate a 12-month rule where an expenditure could be deducted in the year incurred so long as the useful life of the resultant benefit did not extend beyond a year. Id. The NPR advised taxpayers not to seek an accounting method change in reliance upon the proposed rules until final regulations were published. Sec. 1.263(a)-4(o), Proposed Income Tax Regs., 67 Fed. Reg. 77723 (Dec. 19, 2002).

Nine days later, petitioner applied for an accounting method change under Rev. Proc. 97-27, 1997-1 C.B. 680, to deduct 12-month prepaid expenses spanning two taxable years (relevant expenses).  Petitioner relied on the ANPRM and U.S. Freightways Corp. v. Commissioner, 270 F.3d 1137 (7th Cir. 2001), revg. 113 T.C. 329 (1999).  Petitioner then claimed a deduction for the relevant expenses for the first time when it filed its consolidated Federal income tax return for 2002.[2]  Petitioner calculated a CNOL carryback from the 2002 deduction of the relevant expenses, which it carried back to 2000 and 1999. Petitioner claimed a refund for those years based in part on the relevant expense deduction.  Petitioner claimed this deduction for the relevant expenses and the corresponding CNOL carrybacks and refunds even though it had not yet received approval to change its accounting method.

The Treasury Department published final regulations in January 2004 (approximately a year after petitioner's request) stating that a taxpayer is not required to capitalize 12-month prepaid expenses (final regulations).  Sec. 1.263(a)-4(f), Income Tax Regs.; T.D. 9107, 2004-1 C.B. 447, 451.  The final regulations are effective for amounts paid or incurred on or after December 31, 2003 (years after the years at issue).  Sec. 1.263(a)-4(o),

_____

[2]As aforementioned, petitioner capitalized its prepaid expenses for contracts that extended substantially into the following year before 2002.

Income Tax Regs. Respondent subsequently released Rev. Proc. 2004-23, 2004-1 C.B. 785, providing procedures for automatic consent to accounting method changes that complied with the final regulations in principle.[3] It specified, however, that requests for accounting method changes pursuant to the final regulations for a year earlier than the effective date (such as petitioner's) would not be granted. Id. sec. 2.07, 2004-1 C.B. at 786.

Respondent denied petitioner's request to change its accounting method in May 2004 and gave petitioner the option to withdraw its application and receive a refund of the user fee. Respondent invited petitioner to explain its reasons for not withdrawing its request, if petitioner chose not to withdraw and use the provisions of Rev. Proc. 2004-23, supra. Petitioner neither withdrew its application nor provided further explanation to respondent. Respondent issued a letter formally denying petitioner's accounting method change in June 2005. Respondent also issued to petitioner an explanation of items on Form 886-A, to which petitioner submitted a response. Petitioner's response included a discussion of Zaninovich v. Commissioner, 616 F.2d 429 (9th Cir. 1980), revg. 69 T.C. 605 (1978), to argue that Ninth Circuit law allows Ninth Circuit taxpayers to use the 12-month rule.

---

[3]These procedures differ from the discretionary consent procedures under Rev. Proc. 97-27, 1997-1 C.B. 680.

Respondent issued petitioner the deficiency notice disallowing the relevant expense deduction and the corresponding CNOL carrybacks, resulting in the deficiencies at issue. Petitioner timely filed a petition.

## Discussion

This case relates to a taxpayer's change in its accounting method without first obtaining consent from the Commissioner. Respondent denied petitioner's request to change its accounting method to the 12-month rule. Petitioner argues that respondent implemented an automatic rejection policy and automatically disregarded developing caselaw. Respondent contends that he acted within his proper discretion.

We begin by reviewing the procedural requirements and caselaw governing a change of accounting method. A taxpayer must secure IRS consent before changing its accounting method for computing income. Sec. 446(e); sec. 1.446-1(e)(2)(i), Income Tax Regs. The prior consent requirement promotes consistent accounting practices and therefore secures uniform collection of taxes. See FPL Group, Inc. & Subs. v. Commissioner, 115 T.C. 554, 574 (2000) (quoting Barber v. Commissioner, 64 T.C. 314, 319-320 (1975)). Taxpayers are prevented from unilaterally switching to more financially beneficial methods of accounting with the benefit of hindsight. See sec. 446(e). Disallowing such unilateral change helps to protect against the loss of

revenues and prevents administrative burdens and inconvenience in administering the tax laws. See Diebold, Inc. v. United States, 16 Cl. Ct. 193, 208 (1989), affd. 891 F.2d 1579 (Fed. Cir. 1989). Accordingly, it is of great importance to the Commissioner that taxpayers properly request and receive permission to change accounting method before implementing a change.

The taxpayer must continue computing taxable income under its old accounting method if the Commissioner denies the taxpayer's request to change its accounting method. See, e.g., United States v. Ekberg, 291 F.2d 913, 925 (8th Cir. 1961); Advertisers Exch., Inc. v. Commissioner, 25 T.C. 1086, 1092-1093 (1956), affd. 240 F.2d 958 (2d Cir. 1957). In addition, the Commissioner can require a taxpayer to abandon the new accounting method and to report taxable income using the old method if the taxpayer changes its accounting method without first obtaining consent. See, e.g., Advertisers Exch., Inc. v. Commissioner, supra at 1093; Sunoco, Inc. & Subs. v. Commissioner, T.C. Memo. 2004-29.

The Commissioner has wide discretion to grant or deny consent to a change in accounting method. See, e.g., Capitol Fed. Sav. & Loan Ass'n & Sub. v. Commissioner, 96 T.C. 204, 213 (1991). The Commissioner's refusal to consent to a taxpayer's requested change in accounting method is reviewed under an abuse

of discretion standard.  See id. at 213; S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 681-682 (1980).

With this background, we now consider petitioner's arguments.  Petitioner argues that respondent ignored developing caselaw and applied an automatic rejection policy under Rev. Proc. 2004-23, supra.  Respondent argues that petitioner was ineligible to deduct the relevant expenses before the regulations became final.  We agree with respondent.

Petitioner applied to change its accounting method to deduct, rather than capitalize, the relevant expenses. Petitioner originally cited the ANPRM[4] and U.S. Freightways Corp. v. Commissioner, 270 F.3d 1137 (7th Cir. 2001), to support its position, highlighting recent developments favoring its accounting method change request.  Petitioner later relied upon a Ninth Circuit Court of Appeals case that had earlier reversed the Tax Court.  Zaninovich v. Commissioner, supra.  We disagree with petitioner that the Ninth Circuit allowed accrual basis taxpayers, such as petitioner, to use the 12-month rule.

We acknowledge that the Ninth Circuit Court of Appeals reversed our decision in Zaninovich and held that 12-month rental payments by a cash method taxpayer were fully deductible in the

---

[4]The ANPRM did not purport to change existing administrative positions and did not negate the authorities under the then-existing law.  See Blasius v. Commissioner, T.C. Memo. 2005-214. As such, it provided no support for petitioner's request to change its accounting method.

year of payment.  In doing so, it specifically distinguished between an accrual basis taxpayer (such as petitioner) and a cash basis taxpayer (such as the one in <u>Zaninovich</u>).  <u>Id.</u> at 431 n.5. <u>Zaninovich</u> applies only to cash basis taxpayers.  <u>Zaninovich</u> did not indicate that the Ninth Circuit would follow a 12-month rule for accrual basis taxpayers.

Approximately two decades later, the Seventh Circuit Court of Appeals reversed the Tax Court in adopting the 12-month rule for accrual method taxpayers.  See <u>U.S. Freightways Corp. v. Commissioner</u>, <u>supra</u>.  This holding, however, is not binding on respondent, the Tax Court or taxpayers outside the Seventh Circuit.

Petitioner further asks us to find that <u>Zaninovich</u> and <u>U.S. Freightways</u> indicate that the Court of Appeals for the Ninth Circuit would have adopted a 12-month rule for accrual method taxpayers even without enactment of the final regulations. Petitioner also argues that respondent imposed his interpretation of the Code to disregard developing caselaw.  We disagree.  We decline petitioner's invitation to speculate about whether the Court of Appeals for the Ninth Circuit would have followed <u>U.S. Freightways</u> if it had petitioner's case.  Indeed, <u>U.S. Freightways</u> was inconsistent with our decision and the decisions of other Courts of Appeals at the time.  See <u>Blasius v. Commissioner</u>, T.C. Memo. 2005-214 (finding substantial

justification for the Commissioner's attempt to capitalize professional fees, despite appellate reversal in U.S. Freightways).  Accordingly, we find that respondent did not abuse his discretion in rejecting petitioner's accounting method change after Zaninovich and U.S. Freightways.

Petitioner also asks us to find that respondent's rejection of petitioner's accounting method change request was arbitrary and capricious because respondent instituted an automatic rejection policy.  Petitioner asserts that respondent rejected all accounting method change requests aiming to benefit from the 12-month rule if such requests did not comply with the procedures under Rev. Proc. 2004-23, supra.  Accordingly, petitioner argues that respondent's automatic rejection policy meant respondent failed to evaluate petitioner's accounting method change request under traditional application procedures and developing caselaw.

We need not reach this question, however, of whether respondent implemented an automatic rejection policy.  We have already found that respondent acted within his discretion in rejecting petitioner's accounting method change request under then-existing caselaw as applied to petitioner's circumstances. We need not speculate as to whether the Commissioner would have reached a different conclusion if considering a similarly-

situated taxpayer in a circuit where the caselaw supported a different conclusion.[5]

Accordingly, petitioner's only option to change its accounting method to benefit from the 12-month rule was to rely upon the final regulations and their implementation as described in Rev. Proc. 2004-23, <u>supra</u>. The final regulations are effective for amounts paid or incurred on or after December 31, 2003. Petitioner had sought to deduct relevant expenses for 2002, a year before the effective date of the final regulations. Respondent was justified in enforcing the effective date provisions implementing the final regulations. See sec. 7805(a).

We hold that respondent did not abuse his discretion in denying petitioner's request to change its accounting method. Respondent acted within his discretion to assert section 446(e) and require petitioner to abandon the new method and to report taxable income using the old accounting method. See, e.g., <u>Advertisers Exch., Inc. v. Commissioner</u>, 25 T.C. at 1093; <u>Sunoco,</u>

---

[5]Petitioner also argues that respondent's denial of its request resulted in unequal treatment of similarly-situated taxpayers. We again disagree. Denying petitioner's accounting method change application was consistent with respondent's previous pronouncements, including his positions in <u>Zaninovich</u> and <u>U.S. Freightways</u>. Denial of petitioner's application under the final regulations was consistent with the effective date and transitional provisions announced in Rev. Proc. 2004-23, 2004-1 C.B. 785, which applied equally to all taxpayers relying on the final regulations.

Inc. & Subs. v. Commissioner, T.C. Memo. 2004-29.  Accordingly, we sustain respondent's determination to disallow the expenses.

We have considered all remaining arguments the parties made and, to the extent not addressed, we conclude they are irrelevant, moot or meritless.

To reflect the foregoing,

Decision will be entered for respondent.