T.C. Memo. 2005-214

UNITED STATES TAX COURT

JAMES E. BLASIUS AND MARY JO BLASIUS, ET AL.[1], Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4366-01, 4367-01,   Filed September 14, 2005.
            4368-01.

        Ps and R have settled all issues in these
consolidated cases save for Ps' claims made pursuant to
sec. 7430, I.R.C., for recovery of administrative and
litigation costs totaling $8,700.50.  Ps' grounds for
recovery are that R's position in these proceeding with
respect to the capitalization of certain expenditures,
which position R conceded before trial, was not
substantially justified within the meaning of sec.
7430(c)(4)(B)(i), I.R.C.

        Held:  R's position with respect to the
capitalization of the expenditures in question was
substantially justified within the meaning of sec.

_____

        [1]  Cases of the following petitioners are consolidated
herewith:  Steven G. Balan, docket No. 4367-01, and Steven G.
Balan and Rachel Margules, docket No. 4368-01.

7430(c)(4)(B)(i), I.R.C., with the result that Ps' are
not entitled to recovery under sec. 7430(a), I.R.C.


Erwin A. Rubenstein and Nicole R. Tennenhouse, for
petitioners.

Eric R. Skinner and Phoebe L. Nearing, for respondent.


MEMORANDUM OPINION


HALPERN, Judge:  These cases (the consolidated cases, or,
when referred to prior to consolidation, the cases) are before
the Court on petitioners' motions for litigation and
administrative fees and costs (the motions) filed October 9,
2002.[2]  The motions are made pursuant to section 7430 and Rules
230 through 233.[3]  Petitioners seek to recover (1) attorney's
fees of $7,131 and costs of $182 in connection with respondent's
determinations of deficiencies in tax with respect to
petitioners' taxable (calendar) years 1996, 1997, and 1998 (the
audit years),[4] (2) attorney's fees of $1,357.50 incurred through
August 31, 2002, in connection with filing the motions, plus (3)

---

[2]  On Oct. 23, 2002, petitioners moved to consolidate the
cases for purposes of disposing of the motions, which motions to
consolidate were granted on Nov. 18, 2002.

[3]  Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[4]  Docket No. 4366-01 involves calendar years 1996, 1997,
and 1998.  Docket No. 4367-01 involves calendar year 1996.
Docket No. 4368-01 involves calendar years 1997 and 1998.

"other fees and expenses since August 31, 2002." Petitioners also request that we increase the statutory fee limit based on the expertise of petitioners' counsel. Respondent objects to the motions in all respects.

On March 7, 2005, the parties jointly moved pursuant to Rule 141(b) to bifurcate consideration of the issues presented in the motions. They requested that the Court first decide the "primary legal issue", whether respondent has met his burden of proving that his position in the consolidated cases was "substantially justified" within the meaning of section 7430(c)(4)(B)(i). If, and only if, the Court were to decide that issue in petitioners' favor, then the Court would decide the remaining issues, which involve the amount of the attorney's fees and other expenses properly recoverable by petitioners.[5] During a March 14, 2005, teleconference, counsel for the parties agreed that the Court may decide the substantial justification issue without a trial or hearing. On March 17, 2005, the Court issued an order granting the parties' joint motion to bifurcate. No trial or hearing has been held.

Because the parties appear to agree on the underlying facts necessary for us to reach a decision on the substantial

---

[5] A decision in respondent's favor on the substantial justification issue would result in a denial of the motions and render moot the issues relating to the amount of any recoverable attorney's fees or other expenses. See sec. 7430(c)(4)(B).

justification issue, there are no factual issues in that respect to resolve.[6]  Therefore, we shall proceed on the basis of the parties' submissions.  For the reasons discussed below, we shall deny the motions.

## Factual and Procedural Background

The parties filed a "Stipulation of Agreed Facts", which, with accompanying exhibits, is incorporated herein by this reference.

## Petitioners

Petitioners James E. Blasius (Blasius) and Mary Jo Blasius are husband and wife who, at the time their petition was filed, resided in Northville, Michigan.  Petitioners Steven G. Balan (Balan) and Rachel Margules are husband and wife who, at the time their petitions were filed, resided in West Bloomfield, Michigan. During the audit years, Blasius and Balan were the sole shareholders (Blasius, 80 percent, Balan, 20 percent) of Automotive Credit Corporation (ACC), an S corporation.[7]

---

[6]  Respondent concedes that (1) none of the limitations on recovery found in sec. 7430(b) limits petitioners' rights to a recovery and (2) each petitioner is a "prevailing party", as that term is defined in sec. 7430(c)(4)(A), except with respect to the issue of substantial justification raised by  sec. 7430(c)(4)(B) and herein addressed.

[7]  The term "S corporation" is defined in sec. 1361(a)(1). In general, an S corporation has no Federal income tax liability, and its items of income, deduction, credit, and such are passed through to (i.e., taken into account by) its shareholders.  See secs. 1363(a), 1366(a).

History of the Consolidated Cases

By notices of deficiency dated December 29 and 31, 2000 (the notices of deficiency), respondent determined deficiencies in the Federal income taxes of petitioners for the audit years. Explanations included with the notices of deficiency show adjustments to petitioners' incomes resulting from changes in the treatment of items of ACC passed through to Blasius and Balan on account of their status as shareholders of ACC. Respondent required the capitalization of certain costs incurred (and deducted) by ACC in connection with (1) "Loan Origination/ Acquisition", (2) "Offering Expenses", and (3) "Professional Fees".

On March 30, 2001, petitions were filed in the cases (the petitions), and, on May 21, 2001, respondent answered the petitions denying all assignments of error.

On January 9, 2002, the Court notified the parties that the cases were set for trial at the trial session of the Court commencing June 10, 2002, in Detroit, Michigan.

On March 14, 2002, attorney Oksana O. Xenos, on behalf of all petitioners, wrote a letter to Eric R. Skinner, one of respondent's counsel in this case. In that letter, Ms. Xenos requested that, in light of respondent's position regarding the deductibility of the types of costs at issue in the consolidated cases, as stated in Announcement 2002-9, 2002-1 C.B. 536, issued

on February 15, 2002 (discussed infra), respondent "should without inordinate delay, confess error and concede the instant cases in their entirety."

On April 19, 2002, Mr. Skinner informed Ms. Xenos that, in light of the March 15, 2002, issuance of Chief Counsel Notice 2002-21 (discussed infra), respondent would concede the deductibility of the loan origination/acquisition costs at issue in each of the cases (the loan origination/acquisition costs).[8] Sometime previously, Mr. Skinner had been instructed by his superior, Division Counsel, Large and Mid-Size Business Division (LMSB), to contact Victoria Balacek, Senior Legal Counsel (LMSB), to confirm the office's position with respect to the loan origination/acquisition costs. On April 19, 2002, Mr. Skinner learned from Ms. Balacek that a concession of the issue was appropriate in light of Chief Counsel Notice 2002-21. He then contacted Ms. Xenos.

On May 29, 2002, Ms. Xenos again wrote Mr. Skinner, alleging that he was reneging in part on his promise to concede the costs at issue in the consolidated cases. Ms. Xenos requested that "any stipulated decision you propose for our consideration

---

[8] Although petitioners argue that respondent did not concede the deductibility of the loan origination/acquisition costs and professional fees until June 10, 2002, they do not dispute Mr. Skinner's affidavit stating that he informed Ms. Xenos of the concession on Apr. 19, 2002.

provide for an award of reasonable administrative and litigation fees and costs incurred in these civil proceedings."[9]

On May 31, 2002, we filed respondent's trial memorandum in each of the cases. In those memoranda, respondent concedes the deductibility of both the loan origination/acquisition costs and the professional fees at issue.

On June 10, 2002, the cases were called for trial. No trial was held, however, since the Court received from the parties stipulations of settled issues that resolved all of the then outstanding issues in the cases.[10] A section of each stipulation is entitled "Adjustments to Automotive Credit Corporation, Inc. (1120S)". In those sections, petitioner(s) in each case concede(s) that ACC's "expenditures for commissions and offering expenses should be capitalized rather than deducted in the year incurred", and respondent in each case concedes the deductibility

---

[9] Ms. Xenos does not identify the portion of the "costs at issue" that respondent is alleged to be "reneging on". We surmise that Ms. Xenos is not referring to the loan origination/acquisition costs conceded by respondent on Apr. 19, 2002, because her letter specifically confirms that "the service has disavowed the position it pursued in the Lychuk case"; i.e., the capitalization of loan acquisition costs. (See the description infra of the costs at issue in Lychuk v. Commissioner, 116 T.C. 374 (2001).) The request for costs and fees recoverable under sec. 7430 suggests it is to those costs (e.g., attorney's fees) that Ms. Xenos refers in her letter.

[10] Although stipulations of settled issues were not filed in the cases until Oct. 9, 2002, the parties urge, and we agree, that identical stipulations were reached on June 10, 2002. We shall, therefore, treat June 10, 2002, as the date the parties stipulated as set forth in the stipulations filed on Oct. 9.

of ACC's (1) loan origination/acquisition costs and (2) professional fees.

## Nature of the Expenses Conceded by Respondent To Be Deductible in the Year Incurred

### Loan Origination/Acquisition Costs

ACC is the same S corporation that was the focus of our report in Lychuk v. Commissioner, 116 T.C. 374 (2001), which dealt with the 1993 and 1994 tax years of its then shareholders (including petitioners James E. and Mary Jo Blasius). In Lychuk v. Commissioner, supra at 376, we reported certain basic facts with respect to ACC:

> It was formed to provide alternate financing for purchasers of used automobiles or light trucks (collectively, automobiles) who have marginal credit. Its sole business operation is (1) the acquisition of installment contracts from automobile dealers (dealers) who have sold automobiles to high credit risk individuals and (2) the servicing of those contracts. Its primary business activities are credit investigation, credit evaluation, documentation, and the monitoring of collections on installment contracts. * * *

We have no reason to believe that those reported facts have changed.

Moreover, the parties appear to agree that the loan origination/acquisition costs are essentially identical in nature to costs described in Lychuk v. Commissioner, supra at 377-381, as incurred by ACC in investigating and acquiring automobile dealer installment contracts with purchasers of automobiles. Briefly, the costs at issue were incurred by ACC employees in

analyzing credit applications submitted by the dealers' customers, analyzing credit reports, verifying information provided by credit applicants (the credit analysis activities), and purchasing the approved installment contracts from the dealers. Those costs consisted of employee salaries and benefits deemed attributable to the foregoing activities.

### Professional Fees

The professional fees at issue in the consolidated cases (professional fees) were payments, apparently to third parties, relating to the creation of a bank line of credit for ACC, which extended over 2 calendar years.

### Chronology of Administrative and Judicial Developments Regarding the Capitalization Versus Expense Issues Conceded by Respondent in the Consolidated Cases

#### Cases and Public Pronouncements

On June 8, 1998, this Court issued its report in PNC Bancorp, Inc. v. Commissioner, 110 T.C. 349 (1998), revd. 212 F.3d 822 (3d Cir. 2000), in which we held that a bank's costs associated with making loans extending beyond the years in which the costs were incurred, including salaries and benefits paid to employees, are not currently deductible under section 162(a) and must be capitalized under section 263(a).

On March 8, 1999, this Court issued its report in Norwest Corp. v. Commissioner, 112 T.C. 89 (1999), affd. in part and revd. in part sub nom. Wells Fargo & Co. & Subs. v. Commissioner,

224 F.3d 874 (8th Cir. 2000), in which we held that officer salaries and outside legal fees incurred in investigating a potential consolidation that was ultimately consummated are capital expenditures not currently deductible under section 162(a).

On March 21, 2000, the Internal Revenue Service (IRS) released a document entitled "2000 Priority Guidance Plan", in which it listed "loan origination costs" among the expenditures to be addressed in "[g]uidance on deduction and capitalization".

On May 19, 2000, the Court of Appeals for the Third Circuit reversed our decision in <u>PNC Bancorp, Inc. v. Commissioner</u>, 212 F.3d 822 (3d Cir. 2000), revg. 110 T.C. 349 (1998).

On August 29, 2000, the Court of Appeals for the Eighth Circuit reversed in part our decision in <u>Norwest Corp. v. Commissioner</u>, <u>supra</u>, affirming only our capitalization of outside legal fees incurred after a "final decision" had been made to enter into the consolidation. <u>Wells Fargo & Co. and Subs. v. Commissioner</u>, 224 F.3d 874 (8th Cir. 2000), affg. in part and revg. in part <u>Norwest Corp. v. Commissioner</u>, 112 T.C. 89 (1999).[11]

---

[11] Before the Court of Appeals, the Commissioner conceded the deductibility of outside legal fees incurred before a "final decision" was made on the basis of Rev. Rul. 99-23, 1999-1 C.B. 998 (released on Apr. 30, 1999). <u>Wells Fargo & Co. and Subs. v. Commissioner</u>, 224 F.3d 874, 888 (8th Cir. 2000), affg. in part and revg. in part <u>Norwest Corp. v. Commissioner</u>, 112 T.C. 89

(continued...)

On May 31, 2001, this Court issued its report in Lychuk v. Commissioner, supra, in which we held that loan acquisition costs of the type at issue in the consolidated cases and certain offering expenditures are capital expenditures not deductible under section 162(a).

On January 24, 2002, the IRS released an Advance Notice of Proposed Rulemaking (ANPRM) describing "rules and standards that the IRS and Treasury Department expect to propose in 2002 in a notice of proposed rulemaking that will clarify the application of section 263(a) * * * to expenditures incurred in acquiring, creating, or enhancing certain intangible assets or benefits." 67 Fed. Reg. 3461 (Jan. 24, 2002). The ANPRM invites public comments "regarding these standards." Id. at 3461. One of the anticipated proposals is a "12-month rule applicable to expenditures paid to create or enhance certain intangible rights or benefits." Id. at 3462. The ANPRM states:

> Under the rule, capitalization under section 263(a) would not be required for * * * [certain described expenditures paid to create or enhance certain intangible rights or benefits] unless that expenditure created or enhanced intangible rights or benefits for the taxpayer that extend beyond the earlier of (i) 12 months after the first date on which the taxpayer realizes the rights or benefits attributable to the

---

¹¹(...continued)
(1999). Rev. Rul. 99-23, 1999-1 C.B. at 1000, distinguishes between investigatory expenses incurred "in order to determine whether to enter a new business and which new business to enter" (deductible) and expenses "incurred in the attempt to acquire a specific business" (nondeductible).

> expenditure, or (ii) the end of the taxable year following the taxable year in which the expenditure is incurred.  [_Id._]

The list of described expenditures eligible for immediate deduction under the 12-month rule does not include an expenditure for, or with respect to, a bank line of credit of the type acquired by ACC (the professional fees).  The ANPRM also advises that, as one alternative approach designed "to minimize uncertainty and to ease the administrative burden of accounting for transaction costs * * * [,] the rules could allow a deduction for all employee compensation (including bonuses and commissions that are paid with respect to the transaction)".  _Id._ at 3464.

On February 15, 2002, the IRS issued Announcement 2002-9, 2002-1 C.B. 536 (originally published in 2002-7 I.R.B. 536), which is identical to the ANPRM.

On March 15, 2002, the Chief Counsel, IRS, issued Chief Counsel Notice (CCN) 2002-21, in which the Chief Counsel announced that the IRS would no longer "assert capitalization under section 263(a) for employee compensation (other than bonuses and commissions that are paid with respect to the transaction), fixed overhead, or de minimis [under $5000] costs related to the acquisition, creation, or enhancement of intangible assets or benefits."

On December 19, 2002, the Treasury Department issued proposed regulations under section 263(a) (the proposed or

proposed INDOPCO[12] regulations), which contain the 12-month rule described above, and make it generally applicable to "amounts paid to create or enhance an intangible asset".  Sec. 1.263(a)-4(f)(1), Proposed Income Tax Regs., 67 Fed. Reg. 77719 (Dec. 19, 2002).  The proposed regulations also permit a deduction in the year incurred for all "compensation paid to employees (including bonuses and commissions paid to employees)".  Sec. 1.263(a)-4(e)(3)(i), Proposed Income Tax Regs., 67 Fed. Reg. 77717 (Dec. 19, 2002).

The final regulations under section 263(a) (the final or final INDOPCO regulations), published in the Federal Register on January 5, 2004, include both rules.  Sec. 1.263(a)-4(e)(4)(i) and (ii), Income Tax Regs. ("employee compensation * * * including salary, bonuses and commissions" treated as deductible), and sec. 1.263(a)-4(f)(1), Income Tax Regs. (12-month rule, applicable to "amounts paid to create (or to facilitate the creation of)" an intangible).  Pursuant to section 1.263(a)-4(o), Income Tax Regs., the final regulations apply to "amounts paid or incurred on or after December 31, 2003", which is in accord with the statement in the proposed regulations that, as proposed, section 1.263(a)-4 would apply to "amounts paid or

---

[12]  So named for the U.S. Supreme Court decision that was the genesis of the regulations project that ultimately resulted in the final regulations.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992).

incurred on or after the date the final regulations are published in the Federal Register."  Sec. 1.263(a)-4(o), Proposed Income Tax Regs., 67 Fed. Reg. 77723 (Dec. 19, 2002).

Internal IRS Developments

The motions also reference a number of internal IRS documents released by respondent to petitioners in connection with July 1, 2002, Freedom of Information Act (FOIA) requests made by petitioners' counsel.  One of those documents is entitled "Case History Report Form, Internal Revenue Service – Office of Chief Counsel"; it further states:  "Case name: Capitalization of Self-Created Intangibles Regulation" (case history report form).  It traces the Chief Counsel's and Treasury Department's actions that resulted in the issuance of the proposed INDOPCO regulations.  It reflects that, on May 7, 2001, Chief Counsel and Treasury Department officials met to discuss the scope of a proposed regulations project regarding capitalization of self-created intangibles and that, throughout the balance of 1991 and into January 1992, when the ANPRM was issued, there were numerous Chief Counsel – Treasury Department discussions.  At first, when the discussions began on August 1, 2001, they were with regard to the issuance of "a moratorium on capitalization of intangibles in examinations pending issuance of regulations".  Beginning on January 10, 2002 (when "Treasury, the Chief Counsel, and Commissioner (LMSB) decided that guidance should take the form of

an * * * (ANPRM) and should not impose a moratorium on examination"), the discussions turned to the drafting of the ANPRM, which was filed with the Federal Register on January 23, 2002, and published the following day.  See 67 Fed. Reg. 3461 (Jan. 24, 2002).

Another document obtained by petitioners pursuant to their FOIA request and attached to their reply to respondent's objection to the motions is a memorandum dated February 26, 2002, and entitled "Memorandum for LMSB and SB/SE [Small Business/ Self-Employed Division] Employees" (the LMSB-SB/SE memorandum or the memorandum).  The memorandum is from the commissioners of those two divisions, and the subject of the memorandum is: "Guidelines for the Application of Advance Notice of Proposed Rulemaking for Intangibles Under Secs. 263(a)".  The memorandum advises:  "The rules and standards in the ANPRM are not Service position and do not provide any authority for the concession of [capitalization issues discussed in the ANPRM]."  The memorandum notes, however, the statement in the ANPRM that "the IRS and Treasury Department expect to propose [the 12-month rule]" and that that rule "would be consistent with * * * U.S. Freightways Corp. v. Commissioner, 270 F.3d 1137 (7th Cir. 2001), [revg. 113 T.C. 329 (1999)] * * * [which] recognized a 'a one-year rule' for purposes of allowing a deduction for prepaid license fees and insurance premiums."  The memorandum states that, although "the

ANPRM does not provide authority for present application of a 12-month rule, it is likely that Treasury and the Service will ultimately adopt such a rule in regulations". The memorandum concludes: "Given this likelihood, and considering the opinion in U.S. Freightways Corp., we must consider whether it is an efficient utilization of our resources to propose capitalization of those expenditures, particularly in light of the relatively short tax deferral period (one taxable year) that results from the application of the 12-month rule." Accordingly, the memorandum recommends that, with respect to "examinations initiated prior to the release of the regulations", the issue of whether to capitalize "certain short-term expenditures * * * should be pursued", but only where the examination "has [already] resulted in the preparation of a Form 5701, Notice of Proposed Adjustment (LMSB), or Form 4549, Revenue Agents Report (SB/SE)." Otherwise, that issue "should not be pursued, in the absence of contrary guidance."

Discussion

## I. Section 7430

### A. General Scope

Section 7430 provides that a taxpayer may recover reasonable costs, including attorney's fees, incurred in connection with any tax proceeding (administrative or judicial) against the United States if the taxpayer is the prevailing party in the proceeding.

Section 7430(c)(4)(B) provides that a taxpayer shall not be treated as the prevailing party in any proceeding if the United States establishes that its position in the proceeding was substantially justified. See sec. 7430(c)(4)(B)(i). The position of the United States in an administrative proceeding is established as of the earlier of (1) the date the taxpayer receives notice of a decision of the IRS Office of Appeals, or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B). The position of the United States in a deficiency proceeding in this Court is that set forth in the Commissioner's answer. E.g., Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997); see sec. 7430(c)(7)(A).

B. Substantial Justification

For purposes of section 7430, a position of the United States is substantially justified if it has a reasonable basis in both law and fact. E.g., Maggie Mgmt. Co. v. Commissioner, supra at 443. The determination of the reasonableness of that position is based upon the available facts that formed the basis for the position, as well as any controlling legal precedent. Id. The inquiry is not a static one; that is, a position of the United States that was reasonable when established may become unreasonable in light of changed circumstances. See, e.g., Wasie v. Commissioner, 86 T.C. 962, 969 (1986); see also sec. 301.7430-5(c)(2), Proced. & Admin. Regs. (any award of administrative

costs may be limited to costs attributable to the portion of the proceeding during which the position of the IRS was not substantially justified).  The fact that respondent ultimately concedes an issue does not, by itself, establish that his prior position with respect to that issue was unreasonable.  Maggie Mgmt. Co. v. Commissioner, supra at 443.  However, it is a factor that may be considered.  Id.

There is a rebuttable presumption of no substantial justification if the IRS "did not follow its applicable published guidance in the administrative proceeding."  Sec. 7430(c)(4)(B)(ii).  The term "applicable published guidance" is defined to mean "(I) regulations, revenue rulings, revenue procedures, information releases, notices and announcements, and (II) * * * private letter rulings, technical advice memoranda, and determination letters [issued to the taxpayer]."  Sec. 7430(c)(4)(B)(iv).  Section 7430(c)(4)(B)(iii) requires that courts "take into account whether the United States has lost in courts of appeal[s] [sic] for other circuits on substantially similar issues" in determining "whether the position of the United States was substantially justified".

## II.  Summary of the Parties' Arguments

### A.  Petitioners' Arguments

Petitioners make the following arguments in support of their position:

(1) Beginning on March 21, 2000, when the IRS released its 2000 Priority Guidance Plan, listing "loan origination costs" among the expenditures to be addressed in "[g]uidance on deduction and capitalization", respondent was "pursuing" the petitioners for deficiencies "under a litigating position [capitalization of such costs] that * * * [he] knew * * * would soon be reversed." Petitioners reason that respondent's litigating position, even though ultimately successful in Lychuk v. Commissioner, 116 T.C. 374 (2001), was not substantially justified because respondent's placement of the issue of "loan origination costs" on the tax accounting issues list for priority guidance "shows not only the high priority accorded to the issue by the IRS at least as of March 2000, but also the IRS' affirmative intent to actually publish guidance * * * on this controversial issue in 2000." Petitioners also point to the internal IRS and joint IRS –- Treasury Department meetings in 2001 through 2002, which ultimately led to the January 24, 2002, issuance of the ANPRM. Petitioners consider those meetings evidence of respondent's then present intent to concede issues that petitioners were being forced to litigate in the consolidated cases during that timeframe.

(2) Under section 7430(c)(4)(B)(iii), we must take into account the fact that the Commissioner's position was overruled in PNC Bancorp, Inc. v. Commissioner, 212 F.3d 822 (3d Cir.

2000), and <u>Wells Fargo & Co. and Subs. v. Commissioner</u>, 224 F.3d 874 (8th Cir. 2000), in determining whether respondent's present position seeking to capitalize ACC's loan origination/acquisition costs and professional fees was substantially justified. Petitioners argue that respondent was not substantially justified in litigating his position before "finally conceding" after "two years had past [sic] since the <u>PNC</u> and <u>Wells Fargo</u> circuit court decisions."

(3) Because respondent did not concede the loan origination/acquisition costs and professional fees issues until June 10, 2002, which was months after the issuance of the ANPRM, Announcement 2002-9, 2002-1 C.B. 536, and CCN 2002-21, and years after the issuance of Rev. Rul. 99-23, 1999-1 C.B. 998,[13] respondent "did not follow * * * [his] own published guidance, [and, therefore, he] must meet a higher standard of proof to rebut the presumption [of no justification] created by * * * [section] 7430(c)(4)(B)(ii) * * * [, which he] has not met".

B. <u>Respondent's Arguments</u>

1. <u>Loan Origination/Acquisition Costs</u>

Capitalization is substantially justified by the Court's decision in <u>Lychuk v. Commissioner</u>, <u>supra</u>, which upheld the Commissioner's capitalization of costs identical to those at issue in the consolidated cases; i.e., employee salaries and

---

[13] See <u>supra</u> note 11.

benefits paid by ACC in connection with its loan origination/ acquisition activities.

2. Professional Fees

Capitalization is "consistent with the capitalization arguments presented for the loan origination/acquisition and offering expenses of ACC in [Lychuk]." Respondent argues that "the professional fees at issue were related to ACC's securing a line of credit with NBD Bank, N.A., and, thus, were similar to the offering expenses incurred in securing the source of borrowing in Lychuk." Also, like the offering expenses capitalized in Lychuk, they established an intangible asset (a line of credit) that "extended beyond the year in which the fees were incurred."

3. Timeliness of Respondent's Concessions

a. Loan Origination/Acquisition Costs

Respondent's April 19, 2002, concession that petitioners' loan origination/acquisition costs for the audit years are deductible, just over 1 month after the issuance of CCN 2002-21, on March 15, 2002 (wherein the IRS announced that it would no longer seek to capitalize employee compensation related to a capital transaction other than bonuses and commissions paid with respect to the transaction), was timely.

b. <u>Professional Fees</u>

Respondent does not appear to consider timeliness to be an issue because the deductibility of petitioners' professional fees for the audit years was conceded (first in the trial memorandum filed May 31, 2002, and, again, in the Stipulation of Settled Issues filed June 10, 2002), in deference to the anticipated (but not yet formally adopted) 12-month rule.

III. <u>Analysis</u>

A. <u>Introduction</u>

Petitioners' argument that respondent's proposed capitalization of the loan origination/acquisition costs and professional fees at issue was not substantially justified within the meaning of section 7430(c)(4)(B) appears to proceed down three separate but, ultimately, converging roads: Respondent has been improperly litigating against (1) a position that he knew, as early as March 21, 2000, would be adopted by the IRS; (2) controlling, adverse caselaw in certain U.S. Courts of Appeals (<u>PNC Bancorp, Inc. v. Commissioner</u>, 212 F.3d 822 (3d Cir. 2000), and <u>Wells Fargo & Co. and Subs. v. Commissioner</u>, 224 F.3d 874 (8th Cir. 2000)); and (3) his own published guidance in the form of Rev. Rul. 99-23, 1999-1 C.B. 998, the ANPRM issued January 24, 2002, Announcement 2002-9, issued February 15, 2002, and CCN 2002-21 issued March 15, 2002. Petitioners' first two approaches relate to the deductibility of the loan origination/acquisition

costs. Their third approach relates to the deductibility of both those costs and the professional fees, and it posits that respondent's concession in June of 2002 of both issues, almost 3 months after the issuance of CNN 2002-21 and 4 months after issuance of the ANPRM and Announcement 2002-9 (and some 3 years after the issuance of Rev. Rul. 99-23) was not timely. We consider each argument in turn.

B. Effect of Respondent's Litigating Against a Position Likely To Be Adopted in the Future

Petitioners characterize the listing of "loan origination costs" as an item slated for 2000 IRS published guidance as a step that "evidences years of intensive, and ultimately successful, lobbying by the likes of the INDOPCO Coalition to impress its views on the IRS." Petitioners appear to be suggesting that the selection of loan origination costs for 2000 published guidance was tantamount to an IRS decision, on March 21, 2000, to treat those costs as deductible in the taxable year incurred. Therefore, respondent was not substantially justified in seeking to capitalize petitioners' loan origination/ acquisition costs in 2000, despite the subsequent 2001 decision of the Tax Court in Lychuk v. Commissioner, 116 T.C. 374 (2001), sustaining the Commissioner's capitalization of those costs. We disagree.

As noted supra, there is a rebuttable presumption of no substantial justification if respondent fails to follow his own

"applicable published guidance in the administrative proceeding".
Sec. 7430(c)(4)(B)(ii). The term "applicable published guidance"
is defined to mean "regulations, revenue rulings, revenue
procedures, information releases, notices, and announcements,"
and, if issued to the taxpayer, "private letter rulings,
technical advice memoranda, and determination letters." Sec.
7430(c)(4)(B)(iv); see also Rauenhorst v. Commissioner, 119 T.C.
157, 170-171 (2002), wherein we refused "to allow * * * [the
Commissioner's] counsel to argue the legal principles of * * *
[court] opinions against the principles and public guidance
articulated in the Commissioner's currently outstanding revenue
rulings."

The 2000 Priority Guidance Plan does not constitute
"applicable published guidance" that would trigger a rebuttable
presumption of no substantial justification pursuant to section
7430(c)(4)(B)(ii) because it is not among the IRS pronouncements
listed in section 7430(c)(4)(B)(iv). And because it was not a
revenue ruling (or guidance of comparable stature), it did not,
under Rauenhorst, prohibit respondent from litigating to require
the capitalization of loan origination/acquisition costs. More
fundamentally, the 2000 Priority Guidance Plan is not the type of
"guidance" contemplated by either section 7430(c)(4)(B)(ii) or
Rauenhorst. It is, on its face, no more that an informal
announcement of anticipated "guidance projects" that "may be

published in 2000", not specific guidance to taxpayers on any particular issue. Petitioners' suggestion that the inclusion of loan origination costs in the list of planned projects was intended to be an unambiguously favorable response to taxpayer lobbying efforts to have the IRS treat those costs as deductible in the year incurred is sheer speculation without support in the record.

Petitioners also imply that they were improperly required to "expend their resources" litigating the deductibility of loan origination/acquisition costs while the IRS and Treasury Department had meetings, in May, June, and July 2001, in connection with the project that eventually led to the IRS's "change in litigating position" with respect to those costs. The internal IRS and the IRS-Treasury Department meetings and correspondence referred to in the case history report form reflect efforts to reach a decision on the capitalization of various types of expenses, including those at issue in the consolidated cases, not the decision itself. In fact, the discussions, between August 1, 2001, and January 10, 2002, concerning the issuance of a "moratorium" on IRS examiners capitalizing intangibles, pending issuance of regulations, were aborted when it was decided to issue the ANPRM and "not impose a moratorium on capitalization of intangibles in examinations".

We conclude that none of the internal administrative actions referred to by petitioners indicate a present intent to permit a deduction for loan origination/acquisition costs in the year incurred. Moreover, even if they did, those actions do not constitute "applicable published guidance" under section 7430(c)(4)(B)(ii), (iv), or "public guidance" under Rauenhorst v. Commissioner, supra. Therefore, none of those actions is sufficient to support the conclusion, or even raise a presumption, that respondent was not substantially justified in seeking to capitalize ACC's 1996 through 1998 loan origination/ acquisition costs.

C. Controlling Effect of the Courts of Appeals Decisions in PNC Bancorp and Wells Fargo

Petitioners argue that, after the decisions in PNC Bancorp, Inc. v. Commissioner, 212 F.3d 822 (3d Cir. 2000), and Wells Fargo & Co. and Subs. v. Commissioner, 224 F.3d 874 (8th Cir. 2000), reversing this Court's capitalization of employee salaries, respondent was improperly seeking to establish a split of authority in the U.S. Courts of Appeals by continuing to litigate the deductibility of the loan origination/acquisition costs. In support of that argument, petitioners cite section 7430(c)(4)(B)(iii), which requires that we "take into account whether * * * [respondent] has lost in courts of appeal[s] [sic] for other circuits on substantially similar issues". Petitioners also cite two cases in which the Court of Appeals for the Fifth

Circuit awarded attorney's fees pursuant to section 7430 under circumstances in which the Commissioner appealed an adverse decision of the Tax Court in the face of adverse decisions on the same issue in other courts of appeals. See Allbritton v. Commissioner, 37 F.3d 183, 184-185 (5th Cir. 1994), affg. T.C. Memo. 1993-490; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991).

In Lychuk v. Commissioner, 116 T.C. at 405-406, we distinguished the facts of that case from the facts in Wells Fargo & Co. and Subs. v. Commissioner, supra. We said that, in Wells Fargo, the services performed by the bank's employees as to the capital transaction under consideration "were extraordinary in the daily course of their employment * * *. They would have been paid the same salaries regardless of whether the transaction was consummated." Lychuk v. Commissioner, supra at 405. By contrast, in Lychuk (and in the consolidated cases) the employees spent much or all of their time working on installment contract acquisitions, and the employees' compensation "hinged directly on the number of installment contracts [acquired by ACC]". Id. at 405. We also stated our belief in Lychuk that PNC Bancorp, Inc. v. Commissioner, supra, is not "so factually distinguishable from the instant case [and, by extension, from the consolidated cases] to support contrary results." Id. at 407. The issue, then, is whether the 2000 reversal of this Court by the Court of Appeals

for the Third Circuit in <u>PNC Bancorp</u> requires a finding that respondent was not substantially justified in seeking to capitalize ACC's loan origination/ acquisition costs. We do not believe so.

At the time the notices of deficiency were issued to petitioners, capitalization of employee salaries allocable to capital transactions had, in various instances, been upheld by the Supreme Court in <u>Commissioner v. Idaho Power Co.</u>, 418 U.S. 1, 13 (1974), by other U.S. Courts of Appeals (e.g., <u>NCNB Corp. v. United States</u>, 651 F.2d 942, 963 (4th Cir. 1981), vacated on other grounds 684 F.2d 285 (4th Cir. 1982); <u>Cagle v. Commissioner</u>, 539 F.2d 409, 415-416 (5th Cir. 1976) (fee paid to managing partner of a partnership), affg. 63 T.C. 86 (1974); <u>Briarcliff Candy Corp. v. Commissioner</u>, 475 F.2d 775, 781 (2d Cir. 1973), revg. and remanding T.C. Memo. 1972-43), by the Court of Claims in <u>S. Natural Gas Co. v. United States</u>, 188 Ct. Cl. 302, 412 F.2d 1222, 1265 (1969), and by the Tax Court (e.g., <u>Norwest Corp. v. Commissioner</u>, 112 T.C. 89 (1999); <u>PNC Bancorp, Inc. v. Commissioner</u>, 110 T.C. 349 (1998); <u>Perlmutter v. Commissioner</u>, 44 T.C. 382, 404 (1965), affd. 373 F.2d 45 (10th Cir. 1967)).

The cases cited by petitioners, in which attorney's fees were awarded under section 7430, are readily distinguishable. In <u>Allbritton v. Commissioner</u>, <u>supra</u>, the Commissioner's position

had been previously rejected by three U.S. Courts of Appeals, by this Court (upon reconsideration of a decision that had been reversed on appeal), and by "several" U.S. District Courts. The Court of Appeals stated that it had been unable to "find a single published opinion supporting the Commissioner's position." Allbritton v. Commissioner, id. at 184. In Estate of Perry v. Commissioner, supra at 1046, the Commissioner had lost "identical appeals in two other circuits", and the Court of Appeals for the Fifth Circuit rejected the Commissioner's argument that a contrary decision by that same court justified his litigating position merely because that decision had not been specifically overruled. The Court of Appeals noted that, in the context of an amendment to the Code, "the clear and unequivocal language of which unmistakably overrules" its earlier decision, "the absence of a new decision * * * does not equate with unsettled law or first impression". Id. Unlike the circumstances present in Allbritton and Estate of Perry, respondent in the consolidated cases can point to numerous cases that reasonably support his litigating position.

We conclude that the decisions of the Courts of Appeals in PNC Bancorp, Inc. v. Commissioner, supra, and Wells Fargo & Co. and Subs. v. Commissioner, supra, did not preclude respondent's reliance on inconsistent Supreme Court, Courts of Appeals, Court of Claims, and Tax Court authority (buttressed in May 2001, by

our decision in <u>Lychuk</u>) in litigating the deductibility of the loan origination/acquisition costs.  Therefore, those cases do not require us to decide that respondent was not substantially justified in seeking to capitalize those costs.

D.  <u>Controlling Effect of Rev. Rul. 99-23, the ANPRM,<br>Announcement 2002-9, and U.S. Freightways Corp.</u>

1.  <u>Rev. Rul. 99-23</u>

Petitioners argue that respondent's issuance of Rev. Rul. 99-23, 1999-1 C.B. 998, and his concession based on that ruling in <u>Wells Fargo & Co. and Subs. v. Commissioner</u>, <u>supra</u>, of the deductibility of the costs attributable to the "investigatory stage" of the transaction results in a presumption under section 7430(c)(4)(B)(ii) of no substantial justification for respondent's litigating position with respect to the loan origination/acquisition costs.

As noted <u>supra</u> note 11, Rev. Rul. 99-23, 1999-1 C.B. at 1000, classifies as an expense eligible for amortization as a startup expenditure under section 195 (and, in the context of a business expansion, as a deductible expense) "investigatory costs" that are "paid or incurred in order to determine <u>whether</u> to enter a new business and <u>which</u> new business to enter". Although there is an undeniable similarity between the "investigatory costs" described in Rev. Rul. 99-23, <u>supra</u>, as eligible for amortization under section 195 and the credit analysis activities performed by ACC's employees preparatory to

ACC's purchase of any installment contract, we find that respondent's refusal to concede the deductibility of the loan origination/acquisition costs in light of Rev. Rul. 99-23, supra was substantially justified.

Respondent does not address the relevance of Rev. Rul. 99-23, 1999-1 C.B. 998, to the deductibility of the loan origination/acquisition costs in his objection to the motions. He does, however, address the applicability of that ruling to costs incurred in connection with the acquisition of credit card receivables in an IRS field service advice memorandum to the Associate Area Counsel (LMSB), Philadelphia (Field Service Advice 200136010 (Sept. 7, 2001)) (the FSA), which we assume expresses respondent's position on that issue.[14] The costs in question are described as "expenses of determining whether to acquire certain loans, and which loans to acquire", a description that resembles the credit analysis activities of ACC's employees. In the FSA, respondent concludes that "no expression of congressional intent, and neither * * * [section] 195 nor its legislative history, suggest [sic] that costs of investigating the acquisition of a specific capital asset are currently deductible". Respondent concludes that "the holdings in Rev. Rul. 99-23 are not

---

[14] Although they have no precedential status, field service advice memoranda may be cited as an expression of the Commissioner's position. See Rhone-Poulenc Surfactants & Specialities, L.P. v. Commissioner, 114 T.C. 533, 543 (2000), appeal dismissed and remanded 249 F.3d 175 (3d Cir. 2001).

inconsistent with the capitalization of the acquisition costs at issue [in the FSA]".

The legislative history of section 195 lends support to respondent's position in the FSA that that provision was not intended to apply to the cost of investigating the acquisition of a specific capital asset. H. Rept. 96-1278, 1980-2 C.B. 709, is the report of the Committee on Ways and Means (the committee) that accompanied H.R. 7956, which, when enacted in the Miscellaneous Revenue Act of 1980, Pub. L. 96-605, sec. 102, 94 Stat. 3522, added section 195 to the Code. In describing the pre-section 195 law, the committee makes the following observation:

> Expenditures made in acquiring or creating an asset which has a useful life that extends beyond the taxable year normally must be capitalized. These costs ordinarily may be recovered through depreciation or amortization deductions over the useful life of the asset. However, costs which relate to an asset with either an unlimited or indeterminate useful life may be recovered only upon a disposition or cessation of the business. [H. Rept. 96-1278, 1980-2 C.B. at 712.]

Under the heading "Reasons for change", the committee expresses its belief that providing "for the amortization of business startup and investigatory expenses will encourage formation of new businesses and decrease controversy and litigation arising under present law with respect to the proper income tax classification of startup expenditures." Id. Those statements, when read together, indicate that the committee viewed

investigatory and startup costs in connection with the acquisition of a new business as particularly apt candidates for amortization because the taxpayer's recovery of those costs otherwise would not be available until disposition or abandonment of the new business.  The committee, thus, appears to view section 195 as an exception to the rule that the costs of "acquiring or creating an asset which has a useful life that extends beyond the taxable year normally must be capitalized", a rule that the committee views as intrinsically fair when the costs are not incurred in connection with the acquisition of a business, since, in that situation, the costs are normally recovered over the useful life of the asset.  Id.

Also, because (1) ACC was in the business of acquiring dealer installment contracts and (2) the credit analysis activities related to specific installment contracts that had been selected for acquisition, solely contingent on the debtor's creditworthiness, it is not at all clear that those activities are not akin to the post- "final decision" "'due diligence' and/or 'investigatory' expenses" capitalized by the Court of Appeals for the Eighth Circuit in Wells Fargo & Co. and Subs. v. Commissioner, 224 F.3d at 889.

In light of the foregoing, we find that respondent was substantially justified in not considering Rev. Rul. 99-23, supra, to be controlling published guidance requiring the loan

origination/acquisition costs to be treated as deductible in the year incurred.

2.  The ANPRM and Announcement 2002-9

Petitioners suggest that, after the January 24, 2002, issuance of the ANPRM and the February 15, 2002, issuance of (the identical) Announcement 2002-9, which indicate the future adoption of the 12-month rule, respondent was not substantially justified in taking the position, expressed in the LMSB-SB/SE memorandum, that IRS examiners should pursue the capitalization of expenses that would be deductible under the 12-month rule provided the issue had already been raised in a revenue agent's report or in a notice of proposed adjustment.  Petitioners also suggest that the LMSB-SB/SE memorandum is indicative of an improper IRS policy (pursued in the consolidated cases) "to continue with a case based on a litigating position that Respondent will soon change, unless it is decided to be an inefficient use of their resources."  We interpret petitioners' position to be that, after the issuance of the ANPRM and Announcement 2002-9, respondent was no longer substantially justified in litigating the capitalization of either the professional fees or the loan origination/acquisition costs.

The ANPRM and Announcement 2002-9 do not advise taxpayers of an IRS decision to cease capitalizing costs related to intangibles that had been previously subject to capitalization by

the Commissioner.  Rather, as noted supra, they describe "rules and standards" that the IRS and Treasury "expect to propose" (not final rules and standards), and they invite public comments "regarding those standards".  Although they suggest that a deduction for "all employee compensation" (which would include ACC's loan origination/acquisition costs) might be proper, that approach is only one of several alternative approaches to the treatment of employee compensation suggested therein; and deductibility of ACC's professional fees under the 12-month rule is, at best, unclear, as those costs are not among the costs specifically referred to as deductible when they fall within the 12-month rule.  Moreover, to conclude that the ANPRM and Announcement 2002-9 constitute "applicable published guidance" under section 7430(c)(4)(B)(iv), binding on respondent with respect to the capitalization rules discussed therein, would be to negate the December 31, 2003, effective date provided in the final INDOPCO regulations and anticipated in the proposed regulations, a date that respondent has uniformly enforced in connection with requests to change to a method of accounting provided by the final regulations (and, in particular, by section 1.263(a)-4(f)(1), Income Tax Regs., which sets forth the 12-month rule).  See Rev. Proc. 2004-23, sec. 2.07, 2004-1 C.B. 785, 786.

Under section 7430(c)(4)(B)(iv), "notices" and "announcements" are included in the list of IRS pronouncements

that constitute "applicable published guidance" for purposes of establishing a rebuttable presumption of "no justification" under section 7430(c)(4)(B)(ii). Proposed regulations are not included in that list. As an "advance notice of proposed rulemaking", both the ANPRM and Announcement 2002-9 are no more than "advance notice" of a future issuance (proposed regulations) that, when issued, will not constitute "applicable published guidance". Therefore, it is not clear that such pronouncements can, under any circumstances, constitute "applicable published guidance". It is not necessary to resolve that issue in this case, however, because the ANPRM and Announcement 2002-9 do not constitute "guidance" in any sense of that term. They merely suggest principles of expense capitalization or deductibility that may be adopted in the future. They do not purport to change existing administrative positions. Therefore, they did not negate the authorities under the then existing law (discussed supra) that render respondent's litigating position with respect to loan origination/acquisition costs and professional fees substantially justified.

Moreover, we find no inequity or impropriety in respondent's decision, reflected in the LMSB-SB/SE memorandum, to capitalize selectively expenses that otherwise would be deductible under the 12-month rule, if and when adopted, in order to accomplish an "efficient utilization of * * * resources". The IRS is not

precluded from challenging the tax treatment of an item with respect to less than all similarly situated taxpayers subject to such challenge. As stated by the Court of Federal Claims in City of Galveston v. United States, 33 Fed. Cl. 685, 707-708 (1995), affd. 82 F.3d 433 (Fed. Cir. 1996):

> The mere fact that another taxpayer has been treated differently from the plaintiff does not establish the plaintiff's entitlement. The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Revenue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from the obligation. The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude the Commissioner from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the same type of income. A taxpayer cannot premise its right to an exemption by showing that others have been treated more generously, leniently or even erroneously by the IRS. The fact that there may be some taxpayers who have avoided paying a tax does not relieve other similarly situated taxpayers from paying their taxes. [Fn. refs. omitted.]

Accord Austin v. United States, 611 F.2d 117, 119-120 (5th Cir. 1980); Kehaya v. United States, 174 Ct. Cl. 74, 355 F.2d 639, 641 (1966).

        3. U.S. Freightways Corp.

We also conclude that the adoption of the 12-month rule by the Court of Appeals for the Seventh Circuit in U.S. Freightways Corp. v. Commissioner, 270 F.3d 1137 (7th Cir. 2001), revg. 113 T.C. 329 (1999), does not require a finding that respondent was not substantially justified in seeking to capitalize expenses

otherwise deductible under that rule (in this case, the professional fees) after the issuance of that decision on November 6, 2001.  U.S. Freightways Corp. is inconsistent with the decision of this Court, which it reversed, and with the decisions of other U.S. Courts of Appeals, which have held or suggested that expenses that give rise to property with a life extending beyond the taxable year in which the expense is incurred must be capitalized.  See, e.g., Jack's Cookie Co. v. United States, 597 F.2d 395, 402 (4th Cir. 1979); Am. Dispenser Co. v. Commissioner, 396 F.2d 137, 138 (2d Cir. 1968), affg. T.C. Memo. 1967-153; Sears Oil Co. v. Commissioner, 359 F.2d 191, 197 (2d Cir. 1966), affg. in part, revg. in part, and remanding T.C. Memo. 1965-39; Commissioner v. Boylston Mkt. Association, 131 F.2d 966, 968 (1st Cir. 1942), affg. a Memorandum Opinion of the Board of Tax Appeals.  Those cases provide substantial justification for respondent's attempt to capitalize the professional fees, despite the decision of the Court of Appeals in U.S. Freightways Corp.

E.  Timeliness of Respondent's Concessions

Respondent's initial published guidance that he would no longer contest or litigate the deductibility of employee compensation (here, the loan origination/acquisition costs) appeared on March 15, 2002, with the issuance of CCN 2002-21, and his initial published guidance adopting the 12-month rule

(applicable to the professional fees) was the promulgation of section 1.263(a)-4(f)(1), Income Tax Regs., as part of the final INDOPCO regulations, effective December 31, 2003.[15]  Respondent's concession with respect to the deductibility of the professional fees was obviously timely as it preceded respondent's adoption of the 12-month rule.  The only remaining issue is whether respondent's April 19, 2002, concession with respect to the deductibility of the loan origination/acquisition costs was timely.

Respondent's concession with respect to the deductibility of the loan origination/acquisition costs occurred 1 month and 4 days after issuance of CCN 2002-21.  Respondent argues that "he should be allowed a reasonable period of time, following his change in position * * * to concede * * * [the deductibility of the loan origination/acquisition costs] in pending cases", and that the slightly more than 1 month between the issuance of CCN 2002-21 and his concession is reasonable.  We agree.

---

[15]  The 12-month rule was also contained in the proposed regulations issued on Dec. 19, 2002.  Although proposed regulations do not constitute "applicable published guidance" under sec. 7430(c)(4)(B)(ii) and (iv), we have considered them as representing respondent's position on an issue (but lacking the effect of law).  See, e.g., F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970); Allen v. Commissioner, T.C. Memo. 1988-166 n.44.  We are not at this time required to decide whether proposed regulations constitute a position against which respondent may not litigate, consistent with the rationale of Rauenhorst v. Commissioner, 119 T.C. 157, 170-173 (2002), because the proposed INDOPCO regulations, like the final regulations, postdate respondent's concessions in the consolidated cases.

In Stieha v. Commissioner, 89 T.C. 784, 791 (1987), we stated that the Commissioner must review the taxpayer's case, following adverse, controlling litigation, "in a reasonable and timely manner". Accord Mid-Del Therapeutic Ctr., Inc. v. Commissioner, T.C. Memo. 2000-383. Correspondingly, respondent must demonstrate that he acted "in a reasonable and timely manner" after the issuance of CCN 2002-21 preparatory to conceding the deductibility of the loan origination/acquisition costs. We find that he so acted. Respondent's counsel, Mr. Skinner, was under instructions to confirm his office's position with respect to the consolidated cases in light of CCN 2002-21, and immediately upon obtaining confirmation that he should concede the deductibility of the loan origination/acquisition costs, he contacted petitioners' counsel to concede that issue. The same or even longer periods between the event requiring the Commissioner to concede an issue and the actual concession have been held to be reasonable. See Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988) (Government's conduct considered "reasonable" where, after being advised that the partnership in which the taxpayer was a limited partner had received a "no-change" letter, the Government's counsel conceded the case "within a month" during which time counsel "verified information demonstrating that that was the proper course"), affg. T.C. Memo. 1987-52; Ashburn v. United States, 740 F.2d 843, 846, 850-851

(11th Cir. 1984) (Government's conduct considered "reasonable" and "substantially justified" where it took 11 months after the taxpayer filed his complaint for Government counsel to obtain from the IRS and review the relevant administrative files and, after deciding to concede the Government's case, an additional 40 days to obtain permission to concede from the IRS and the Review Section of the Department of Justice); White v. United States, 740 F.2d 836, 842 (11th Cir. 1984) (Government's concession of an issue less than 3 months after taxpayer raised it in an amended complaint considered "reasonable" behavior and, therefore, "substantially justified"); Shifman v. Commissioner, T.C. Memo. 1987-347 (Government's concession within 2 months after the petition was filed considered "reasonable" thereby barring taxpayer's recovery of litigating costs under section 7430).[16]

---

[16] Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1998), affg. T.C. Memo. 1987-52 and Shifman v. Commissioner, T.C. Memo. 1987-347, were decided under sec. 7430 before it was amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2752, to substitute "was not substantially justified" for "was unreasonable" in describing a Government position that could give rise to an award of reasonable litigation costs under that provision. As we noted in Shifman v. Commissioner, supra at note 5: "this Court has previously held that the test of whether a Government action is 'substantially justified' is essentially one of reasonableness" (citing Baker v. Commissioner, 83 T.C. 822, 828 (1984)), vacated and remanded on another issue 787 F.2d 637 (D.C. Cir. 1986). Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984), and White v. United States, 740 F.2d 836 (11th Cir. 1984), were decided under the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412 (2000). A principal reason for the enactment of sec. 7430 was to extend the relief afforded by EAJA to proceedings in this Court so that "one set of rules * * * [would]
(continued...)

Petitioners reliance on <u>Stieha v. Commissioner</u>, <u>supra</u>, is misplaced.  In that case, after this Court issued a dispositive decision that caused the Commissioner's position to no longer be substantially justified, the Commissioner continued to oppose the taxpayer's motion to dismiss, ignoring our decision.  The Commissioner ultimately conceded the case more than 4 months after the release of our decision.  Under the circumstances, we found that the Commissioner's "failure to review petitioners' case in a reasonable and timely manner" caused the taxpayer to incur "more attorneys fees than should have been necessary." <u>Stieha v. Commissioner</u>, 89 T.C. at 791.  Here, after the issuance of CCN 2002-21, respondent's counsel took no steps other than to confirm his office's position in the consolidated cases in light of that notice, and immediately upon being told to concede the deductibility of the loan origination/acquisition costs at issue, he did so.

We conclude that respondent was substantially justified in not conceding the deductibility of the loan origination/ acquisition costs until April 19, 2002, or the deductibility of the professional fees until he filed his trial memorandum on May 31, 2002, or, alternatively, until the Stipulation of Settled

---

[16](...continued)
apply to awards of litigation costs in tax cases whether the action is brought in a U.S. District Court, the Court of Claims, or the U.S. Tax Court." H. Rept. 97-404,  at 11 (1982).

Issues was submitted to the Court on June 10, 2002.

IV.  Conclusion

Respondent was substantially justified in seeking to capitalize the loan origination/acquisition costs and professional fees at issue in the consolidated cases until the dates on which he conceded those issues as determined herein.

An appropriate order denying petitioners' motions for costs under section 7430 will be issued.